UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULA LYNCH, | |
| Plaintiff, | Civil Action No. 20-934 |
| v. | Judge Beryl A. Howell |
| WAL-MART ASSOCIATES, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

Following a three-day trial, a jury returned a verdict, on August 9, 2023, in favor of the defendant Wal-mart Associates, Inc. ("Wal-mart"), on claims brought by plaintiff Paula Lynch on behalf of the Estate of her daughter Diamond Lynch, for violations of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401 *et seq.,* and the Protecting Pregnant Workers Fairness Act ("PPWFA"), D.C. Code § 21-1231 *et seq*. *See* Verdict Form, ECF No. 62; Minute Order (April 8, 2022) (granting Paula Lynch's unopposed motion to substitute for plaintiff-decedent Diamond Lynch). While plaintiff was ably represented by counsel both before and at trial, she is now proceeding *pro se*. Pending before the Court are defendant's Bill of Costs, ECF No. 65, to which plaintiff, while counseled, filed objections, Pl.'s Opp'n to Def.'s Bill of Costs, ECF No. 75-1, and plaintiff's *pro se* "Motion for Reconsideration" [of the Clerk's Entry of Judgment], ECF No. 67, as amended, ECF No. 71, which invokes Federal Rules of Civil Procedure 59 and 60(b) as the procedural grounds for relief, *id*. at 1. For the following reasons, plaintiff's motion for a new trial or other relief from the jury verdict in defendant's favor is denied, and defendant's Bill of Costs is granted.

1

I.       **BACKGROUND**

Plaintiff Diamond Lynch brought this action in D.C. Superior Court in February 2020, alleging violations of the DCHRA by defendant, her former employer. *See* Def.'s Notice of Removal at 1–2, ECF No. 1. Following removal to this Court, plaintiff filed an amended complaint, reaffirming her claims under the DCHRA and adding claims under the PPWFA. Am. Compl. at 1, ECF No. 18. Defendant filed a motion for summary judgment in April 2021, which this Court granted in part, as to plaintiff's retaliation claim brought under the PPWFA, *see* Minute Order (March 8, 2022), but denied as to plaintiff's claims of discrimination under the DCHRA, *see* Minute Order (March 8, 2022). By this time, plaintiff Diamond Lynch had passed away, and her mother, plaintiff Paula Lynch, filed a consent motion to substitute on her behalf in this litigation, which this Court granted by minute order in April 2022. *See* Minute Order (April 8, 2022).

Less than three weeks before a trial was scheduled to begin in this case, defendant filed an Emergency Motion to Dismiss the case, on the basis that defendant learned only at the pretrial conference on July 14, 2023 that plaintiff-decedent had died due to a drug overdose, and that both plaintiff-decedent and plaintiff had "fail[ed] to supplement discovery responses with information that Decedent Lynch suffered another non-fatal drug overdose" five days prior to her deposition in the case. Def.'s Emergency Mot. for Sanction of Dismissal with Prejudice ("Def.'s Emergency Mot.") at 1, ECF No. 48. Defendant claimed that this failure deprived them of "an opportunity to adequately prepare its defenses to her claims for damages, including her claim for emotional distress damages, and to depose and/or cross-examine Decedent Lynch." *Id.* After hearing argument on defendant's motion, this Court denied defendant's Emergency Motion to Dismiss, *see* Minute Order (July 28, 2023), because "the sanction of dismissal . . . was

unwarranted, given other information already disclosed to defendant providing significant clues as to Diamond Lynch's use of illicit drugs, such as plaintiff's cause of death reflected on her death certificate." Minute Order (Aug. 9, 2023). Instead, defendant was permitted an opportunity for additional discovery before trial to permit defendant to investigate Diamond Lynch's history of drug use during the relevant timeframe and reopened fact discovery for a limited period, from July 28, 2023 to August 4, 2023, for further inquiry only as to plaintiff-decedent's drug use. *See* Minute Order (July 28, 2023). Defendant conducted another deposition of plaintiff during this timeframe, to inquire into her knowledge of plaintiff-decedent's drug use. *See* Def.'s Reply to Pl's Opp'n to Def.'s Bill of Costs at 5, ECF No. 77. This case then proceeded to trial as scheduled on August 7, 2023.[1]

---

[1] Despite this last-minute flurry of motion practice and discovery over plaintiff-decedent's drug abuse and overdoses, this issue anticipated by both sides was never raised during trial. Indeed, prompted by defendant's motion to dismiss, plaintiff moved to "prohibit Defendant from implying or arguing that Ms. Lynch's drug use makes her dishonest or not credible merely because she used drugs at some time in the past" and "requir[ing] Defendant to establish a foundation before allowing it to impeach Ms. Lynch's credibility with the suggestion that she was under the influence of drugs when she was fired or when she testified at her deposition." Pl.'s Mem. in Supp. of Mot. *in Limine* to Exclude Evidence at 1, ECF No. 52-1. Defendant responded that resolving plaintiff's motion *in limine* prior to trial would be "premature," Def.'s Opp'n to Pl.'s Mot. *in Limine* to Exclude Evidence at 1–3, ECF No. 53, "essentially handing plaintiff a victory on her motion," Minute Order (Aug. 9, 2023), and thus ruling was reserved, with the Court instructing the parties prior to opening statements not to discuss the issues presented in plaintiff's motion *in limine* until defendant alerted the Court of a change of defendant's position and that the motion should be resolved, Minute Order (Aug. 9, 2023). Only after both sides rested, defendant requested, during the charging conference, consideration of its proposed jury instruction regarding a permitted inference for plaintiff's failure to supplement discovery by producing information about Diamond Lynch's use of illicit drugs in November 2020 and April 2021. *Id.* This requested jury instruction was denied since defendant never put at issue during the evidentiary portion of the trial either plaintiff's failure to supplement discovery and produce this information or Diamond Lynch's use of illicit drugs during the relevant timeframe. *Id.* The Court also denied plaintiff's motion *in limine* as moot. *Id.*

3

After a three-day trial, a jury returned a verdict in favor of defendant, on August 9, 2023. Plaintiff filed a Motion for Reconsideration, ECF No. 67, on September 6, 2023, as amended in her Final Amended Motion for Reconsideration, ECF No. 71. Plaintiff requests a new trial for several reasons, including allegations that defendant and its witnesses committed "misconduct, hijinks, and fraud" throughout the course of the trial. Pl.'s Final Amended Motion for Reconsideration ("Pl.'s Amended Mot.") at 1. In addition to plaintiff's motion for a new trial, defendant's Bill of Costs is ripe for decision. Def.'s Bill of Costs, ECF No. 65.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 59

Federal Rule of Civil Procedure 59 authorizes the grant of a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Rather than define the precise circumstances justifying a new trial, Rule 59 turns to case law and permits a new trial in those circumstances traditionally viewed as permitting a new trial. *ABM Marking, Inc. v. Zanasi Fratelli*, *S.R.L.*, 353 F.3d 541, 543 (7th Cir. 2003) ("Rule 59(a), in a bit of a circular way, allows new trials in cases where new trials have been traditionally allowed at law."). The D.C. Circuit has explained that a "jury verdict stands unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Youssef v. F.B.I.*, 687 F.3d 397, 403 (D.C. Cir. 2012) (internal quotation marks omitted). Other circuits have given further meaning to this less than pellucid standard, ruling that a new trial is "warranted when a jury has reached a 'seriously erroneous' result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by

prejudice or bias." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (citations omitted); *see also Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014) ("A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party.").

"The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 646 (D.C. Cir. 1988) ("The decision whether to grant a motion for a new trial is ordinarily 'entrusted to the sound discretion of the trial court.'" (quoting *Grogan v. Gen. Maint. Serv. Co.*, 763 F.2d 444, 447 (D.C. Cir. 1985))). "That authority is large," *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 433 (1996), encompassing the district court's discretion "to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence," *id*. (alteration in original; internal quotation and citation omitted), or if the verdict is excessive, *id*. At the same time, "[o]rdinarily Rule 59 motions for either a new trial or a rehearing are not granted by the District Court where they are used by a losing party to request the trial judge to reopen proceedings in order to consider a new defensive theory which could have been raised during the original proceedings." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993) (quoting *Grumman Aircraft Engineering Corp. v. Renegotiation Board,* 482 F.2d 710, 711 (D.C. Cir. 1973), *overruled on different grounds*, 421 U.S. 168 (1975)). Put another way, "a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously," *id.*, or "to relitigate the same matters already determined by the court," 12 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE § 1.18 (3d ed. 1999).

The high threshold for a new trial reflects the "well-settled" principle that "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (citation omitted); *see also Aero Int'l, Inc. v. U.S. Fire Ins. Co.*, 713 F.2d 1106, 1113 (5th Cir. 1983). "Although parties may certainly request a new trial or amended findings where clear errors or manifest injustice threaten, in the absence of such corruption of the judicial processes, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1287 (2d Cir. 1994) (internal quotations and citation omitted).

The Supreme Court has made clear that "'[a litigant] is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 553 (1984) (quoting *Brown v. United States*, 411 U.S. 223, 231–32 (1973)). This principle is predicated on the sound pragmatic reasons that "[t]rials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing caseload." *Id.* For this practical reason, "[a] new trial is unwarranted if the trial error is harmless." *Caudle v. Dist. of Columbia*, 707 F.3d 354, 359 (D.C. Cir. 2013) (citing *United States v. Whitmore,* 359 F.3d 609, 624 (D.C. Cir. 2004)); *see also* 11 Charles Alan Wright & Arthur R. Miller, et al., *Federal Practice and Procedure* § 2882 (3d ed. 2012) ("[A] district court in passing on a motion for a new trial . . . must be guided by what substantial justice requires and must disregard errors that were harmless."). To determine whether an error

6

is harmless, a court must "'measur[e] the harm in terms of whether the error had substantial and injurious effect or influence in determining the jury's verdict, not merely whether the record evidence is sufficient absent the error to warrant [the jury verdict]. Consequently, an evidentiary error is harmless if (1) the case is not close, (2) the issue not central, or (3) effective steps were taken to mitigate the effects of the error.'" *Caudle*, 707 F.3d at 361 (quoting *Ashcraft & Gerel v. Coady,* 244 F.3d 948, 953 (D.C. Cir. 2001)).

Any motion for a new trial "must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b).

### B. Federal Rule of Civil Procedure 60(b)

Federal Rule of Civil Procedure 60 provides that a court may relieve a party from a final judgment, order, or proceeding for one of several enumerated reasons, including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," Fed. R. Civ. P. 60 (b)(2), "fraud[], misrepresentation, or misconduct by an opposing party," *id*. 60(b)(3), or "any other reason that justifies relief," *id*. 60(b)(6). The decision whether or not to grant a motion under Rule 60(b) is "committed to the discretion of the District Court," *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993), upon balancing the interests in preserving the finality of a jury verdict of judgment, *see Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004), and "the incessant command of a court's conscience that justice be done in light of *all* the facts," *Bain v. MJJ Prods.*, 751 F.3d 642, 646 (D.C. Cir. 2014) (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (alteration in original; internal quotation marks omitted)).

As to the enumerated grounds for Rule 60(b) relief, "[v]ague assertions . . . which fail[] to explain what specific new evidence" the plaintiff could not have timely discovered do not warrant relief under Federal Rule of Civil Procedure 60(b)(2). *Uzoukwu v. Metro. Washington Council of Gov'ts*, 748 F. App'x 355, 357 (D.C. Cir. 2019). Where a party knew about evidence at the time of trial or could have reasonably discovered it through due diligence, that evidence cannot support a motion for relief under Rule 60(b)(2). *Bain*, 751 F.3d at 646. In addition, while Rule 60(b)(3) allows for relief from a judgment if a movant identifies "fraud[], misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), the law is "well-settled that a litigant seeking relief from a judgment under [Rule] 60(b)(3) based on allegations of fraud upon the court must prove the fraud by clear and convincing evidence," *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995). Where a movant did not object at trial or seek to take any action based on the alleged fraud, misrepresentation, or misconduct, a court may find that the movant has failed to meet this standard. *Martin v. Howard Univ.*, 275 Fed. App'x 2, 9 (D.C. Cir. 2008). Finally, Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the [other] grounds for relief [from a final judgment] enumerated in clauses (b)(1) through (b)(5)" of Rule 60. *Salazar ex rel. Salazar v. Dist. of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)). Relief under Rule 60(b)(6), however, "applies only to 'extraordinary' situations," *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1140 (D.C. Cir. 1988) (quoting *Ackermann v. United States*, 340 U.S. 193, 202 (1950)), and "should be only sparingly used," *id*. (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)), demanding that "the trial judge . . . strike a

"'delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of all the facts,'"" *id*. at 1138 (second omission in original) (emphasis omitted) (quoting *Good Luck Nursing Home, Inc.*, 636 F.2d at 577).  The "extraordinary circumstances" requirement means that plaintiff "must clear a very high bar to obtain relief under Rule 60(b)(6)," *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (quoting *Ackermann*, 340 U.S. at 199), and the Rule "may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident,'" *id*. (quoting *Good Luck Nursing Home, Inc.*, 636 F.2d at 577); *see also id*. ("The case law makes clear that Rule 60(b)(6) is not an opportunity for unsuccessful litigants to take a mulligan.").

### C. Taxation of Costs

Federal Rule of Civil Procedure 54(d) provides, in relevant part, that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  As the Supreme Court has noted, "liability for costs is a normal incident of defeat." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).  Federal law enumerates the costs that may be taxed, *see, e.g.*, 28 U.S.C. § 1920, with additional guidance set out in this Court's Local Civil Rules, *see* D.D.C. LCvR 54.1.  In evaluating motions to tax costs, the court must "determine first which, if any, of the costs requested by the prevailing party are statutorily authorized," *Sun Ship, Inc. v. Lehman*, 655 F.2d 1311, 1318 (D.C. Cir. 1981), with "[a] finding that some or all of the costs requested are statutorily authorized [ ] giv[ing] rise to the rule 54(d) presumption favoring their award," *id*.  Next, the court is "obliged to determine whether the prevailing party engaged in any misconduct during the lawsuit 'rendering the litigation . . . unnecessarily prolix and expensive,'" which would warrant "a denial or reduction" of the requested costs. *Id*. at 1318–19 (quoting *Chicago Sugar Co. v. American Sugar Refining Co.*, 176 F.2d 1, 11 (7th Cir. 1949)).  "Finally,

9

whether or not the trial judge finds that the victor engaged in misconduct, he retains broad discretion under rule 54(d) to disallow any non-statutory cost items on the victor's bill which seem excessive under the circumstances." *Id.* at 1319; *see also Craig v. District of Columbia*, 197 F. Supp. 3d 268, 285–86 (D.D.C. 2016) ("the district court has discretion in allowing, disallowing, or apportioning costs" (citing *Moore v. Nat'l Ass'n of Secs. Dealers, Inc.*, 762 F.2d 1093, 1107 (D.C. Cir. 1985)). Given the presumption favoring the award of statutorily authorized costs, "a court may neither deny nor reduce a prevailing party's request for costs without articulating some good reason for doing so." *Siegel v. Mazda Motor Corp.*, 878 F.2d 435, 439 (D.C. Cir. 1989).

### III. DISCUSSION

Plaintiff's motion for a new trial and defendant's bill of costs will be considered in turn.

**A. Plaintiff's Motion for a New Trial**

Plaintiff is disappointed in the jury verdict finding in favor of defendant. She therefore timely filed, on September 6, 2023—the 27th day following entry of the jury verdict—her pending motion styled as a "Motion for Reconsideration" seeking "a new trial" on "the grounds that Defendant Wal-Mart and Associates did willfully and with mal intent corrupt and abuse these proceedings through misconduct, hijinks, and fraud upon the jury, this Honorable Court, and Plaintiff." Pl.'s Amended Mot. at 1.[2] According to plaintiff, defendant produced doctored or falsified records during trial, *id.* at 1–4, violated its discovery obligations through spoliation of

---

[2] Plaintiff's initial Motion for Reconsideration was filed in conjunction with a Motion for an Extension of Time to File a Supplemental Memorandum in support of her motion, which extension was granted, *see* Minute Order (Sep. 11, 2023), after which plaintiff filed a Final Amended Motion for Reconsideration, ECF No. 71. Upon submission of plaintiff's reply, defendant moved for leave to file a sur-reply, which motion this Court granted, Minute Order (Nov. 17, 2023), and plaintiff moved to amend or correct five pages of her reply, which motion was also granted, *see* Minute Order (Nov. 30, 2023), and then filed her amended reply as an errata, *see* ECF No. 89. Each of these filings has been considered.

10

evidence, *id.* at 4–7, and committed misconduct, perjury, and pretext, *id.* at 7–10. As discussed below, plaintiff's allegations and arguments fail to satisfy the requirements for relief under either Rule 59 or Rule 60(b).

**1. Fraud and Misrepresentation**

Plaintiff accuses defendant of committing "fraud and misrepresentation" throughout the trial by "witness, evidence, stipulations, and other devices Plaintiff Pro Se cannot legally specify." Pl.'s Amended Mot. at 1. No reason is given for why plaintiff is unable to "specify" any evidence backing up her accusations. In any event, as purported examples, plaintiff alleges that defendant produced "backdated, doctored/falsified records to cover the unfair and improper termination" of her daughter, including "records it backdated as far as 2 years and 3 months before she was ever hired" and a "falsified, misdated record of Plaintiff's supposed interview/statement during Open Door calls." *Id*. at 1–4. In justifying her request for a new trial on this ground, plaintiff claims that the "misdated, nonfactual documentation" produced by defendants is "newly discovered evidence which Plaintiff Pro Se could not have discovered" prior to trial or in time to move for a new trial, *id.* at 4, and indicates that her "[f]ormer counsel did not detect Defendant's devices and . . . could not put on her credible testimony of the steps Defendant had taken to discriminate against her [daughter]," Pl.'s Reply to Def's Opp'n to Final Amended Mot. for Reconsideration ("Pl.'s Reply") at 1, ECF No. 83.

These conclusory and unsupported accusations of fraud and misrepresentation allegedly perpetuated by defendant fall far short of warranting a new trial or relief from judgment under Rule 59 or Rule 60(b). The purportedly "backdated" and "false" records to which plaintiff points were apparently produced to plaintiff in discovery during the course of the litigation, when plaintiff had counsel, and thus these records could have been thoroughly examined and any

11


serious issues raised and tested through various discovery tools, ranging from interrogatories to depositions, to surface any support for these serious accusations of fraud. In other words, plaintiff's counsel had the opportunity to identify any such fraud or misrepresentation during discovery and present evidence countering such conduct at trial. Defendant vigorously denies these accusations, stating "[p]laintiff has no proof Walmart 'backdated, doctored,' or 'falsified' the document to gain any sort of advantage in this case." Def.'s Opp'n to Pro Se Pl.'s Final Amended Mot. for Reconsideration ("Def.'s Opp'n") at 8, ECF No. 76. On the current record, these accusations amount only to name-calling.

More to the point, plaintiff has not identified with any specificity any fraud or misrepresentation that might have contributed to a manifestly unjust result at trial. *See Bowie v. Maddox*, 540 F. Supp. 2d 204, 208 (D.D.C. 2008) (noting that new trial motion under Rule 59 should only be granted after a jury verdict if "denial of the motion will result in a clear miscarriage of justice.") (internal quotation marks omitted). Nor has she met her burden of demonstrating that these allegations of falsified or doctored documents could not have been addressed during discovery or trial. *See Kattan by Thomas*, 995 F.2d at 276 (Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before the judgment issued." (quoting *Fed. Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir. 1986)); *Moore v. Hartman*, 102 F. Supp. 3d 35, 65–66 (D.D.C. 2015) ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"). Merely raising conclusory allegations of fraud or misrepresentation does not qualify as new evidence or exceptional circumstances entitling plaintiff to relief under Rule 59 or Rule 60(b).

**2. Discovery Violations and Spoliation**

Plaintiff next contends that defendant "deliberately committed several discovery violations which impaired the Plaintiff's case." Pl.'s Amended Mot. at 4. She alleges that defendant "did not respond in truth to Plaintiff's Interrogatories while at the same time, feigning that plaintiff had been negligent—despite receiving the requested and factual records." *Id.* As support for this allegation, plaintiff identifies several documents and other forms of evidence that defendant allegedly "withheld in bad faith," including: plaintiff-decedent's timesheets and weekly schedule, records related to her employment and defendant's ethics processes, relevant witnesses that may have had information about plaintiff's claim, and video surveillance. *Id.* at 4–6. Plaintiff also claims that other unidentified records in defendant's custody, if disclosed to the jury, "would have changed the jury's understanding and outcome of trial." *Id.* at 4. According to plaintiff, "[t]here is no reasonable inference that can be made from the Defendant's spoliation with discovery except that Defendant is guilty of violating Decedent Plaintiff's rights and abusing the judicial process to impede fair trial." Pl.'s Reply at 5.

Plaintiff's allegations that defendant committed discovery violations and spoliation of evidence are unsupported and conclusory, and again fail to warrant relief under either Rule 59 or Rule 60(b). As defendant notes, plaintiff "fails to cite to any specific discovery requests she claims Defendant failed to answer adequately and truthfully." Def.'s Opp'n at 10. To the contrary, many records that plaintiff claims were wrongfully withheld were never requested by plaintiff during discovery, and related records that defendant did produce were not used as evidence during the jury trial. *Id.* Indeed, plaintiff nowhere indicates precisely why any of the claimed deficiencies in defendant's discovery productions would have made a difference at trial.

13

In any event, defendant refutes each of plaintiff's claims related to discovery violations and withholding of evidence, stating that "[p]laintiff is simply attempting to get another chance to relitigate this case using the same information that has been available to her for years." *Id.* at 12.  While this Court is not privy to the full scope of discovery requested and produced during the litigation, the parties to this litigation appeared to pursue discovery aggressively, including seeking and obtaining a Protective Order, ECF No. 13; twice obtaining orders extending the time period necessary to conduct and complete discovery, *see* Min. Orders (Oct. 14, 2020; Dec. 31, 2020); plaintiff obtaining court-ordered access to a video exhibit in an accessible format, Min. Order (July 14, 2023); and obtaining an order re-opening fact discovery on limited issues shortly before trial, Min. Order (July 28, 2023).  Plaintiff's attempts to relitigate issues that could or should have been pursued in conjunction with these discovery efforts before trial does not warrant relief under Rule 59 or Rule 60(b).

### 3. Misconduct, Perjury, and Pretext

Next, plaintiff requests relief under Rules 59 and 60(b) based on allegations that defendant and its witnesses committed misconduct and perjury, and lied when fabricating pretexts for plaintiff-decedent's termination.  Pl.'s Mot. at 7–9.  As support, plaintiff points to findings by an Administrative Law Judge ("ALJ"), made during plaintiff-decedent's hearings to obtain unemployment benefits.  *Id.* at 7 (quoting ALJ finding that defendant did not meet its burden to prove that plaintiff-decedent "committed an act or acts that constituted willful, deliberate, or intentional work-related misconduct that warrants denying her unemployment benefits.").  A prior finding by an ALJ in an entirely different administrative proceeding to resolve wholly different claims for relief than at this civil trial has no bearing in this case.  Plaintiff also makes several unsubstantiated claims of perjury, misconduct, and ethics violations,

14

without providing any proof of such violations or specifying in detail which rules of ethics or procedure defendant may have violated. *Id.* at 7–9. Defendant denies committing any misconduct or ethics violations, and correctly posits that plaintiff's conclusory allegations cannot surmount the high bar required to demonstrate entitlement to relief under Rule 59 or Rule 60(b).

### 4. Trial Publicity

Lastly, plaintiff claims that "[r]ecent social media and news reports about decedent Plaintiff's death and introduction of post termination video reportedly confused jurors—and when combined with Defendant's efforts to malign Plaintiff—likely prejudiced and confounded jurors." *Id.* at 10. As defendant correctly notes, plaintiff has presented no evidence that the jury was exposed during the trial or deliberations to any media coverage of plaintiff, let alone that any such coverage had any role in the verdict reached. Def.'s Opp'n at 14. Moreover, the jury was expressly instructed by the Court both in preliminary instructions and in final instructions not to research anything about the case on their own, including searches on social media. *See, e.g.,* Final Jury Instructions, at 10, ECF No. 58. In sum, plaintiff fails to establish any manifest injustice arose due to trial publicity to warrant granting her relief under Rule 59 or Rule 60(b).

### B.  Defendant's Bill of Costs

After the conclusion of the jury trial, defendant timely filed a Bill of Costs for $7,871.73. Def.'s Bill of Costs at 1, ECF No. 65. The identified costs included $240 in fees for service of summons and subpoena, $5,739.30 in fees for printed or electronically recorded transcripts necessarily obtained for use in the case, and $1,892.43 in fees for witnesses. *Id.* Each of these claimed costs is supported by documentation submitted as an exhibit to the Bill of Costs. Def.'s Bill of Costs, Exhibit A, ECF No. 65-2.

Local Civil Rule 54.1(d) enumerates the costs that may be taxed by the clerk, including but not limited to "[c]osts of service of summons and complaint," deposition transcript costs "if the deposition was used on the record, at a hearing or trial," and "[w]itness fees pursuant to 28 U.S.C. § 1821(b), and travel and subsistence costs pursuant to 28 U.S.C. § 1821(c), paid to each witness who testified at a hearing or trial." Each of the costs claimed by defendant falls within one of these enumerated categories. Def.'s Bill of Costs at 1.

Through counsel, plaintiff objects to the Bill of Costs for three reasons: (1) defendant's filing was premature since plaintiff's motion for reconsideration is pending, Pl.'s Objection to Bill of Costs at 1, ECF No. 75-1; (2) the rush fee for service on Ayesha Henderson (one of defendant's witnesses), in the amount of $120, *id*.; (3) costs in the amount of $3,223.05 related to investigation into plaintiff-decedent's cause of death, *id*. at 1–2; and (4) certain expenses, totaling $1,999.58, incurred by defendant's witness Montez Morrison for his travel to the District of Columbia for trial, *id*. at 2. Altogether, plaintiff objects to $5,342.63 of the costs identified by defendants. *Id.* at 2. None of plaintiff's objections withstands scrutiny.

As to plaintiff's first objection, defendants rightly point out that Local Civil Rule 54.1(c) allows the Clerk to "tax costs after the judgment has become final or at such earlier time as the parties may agree or the court may order." Courts have discretion to award costs before the entry of a final judgment. *See Friends for All Children, Inc. v. Lockheed*, 725 F.2d 1392, 1396 (D.C. Cir. 1984). Although, as defendant acknowledges, Local Civil Rule 54.1(c) says a judgment is final "when the time for appeal has expired and no appeal has been taken, or when the court of appeals issues its mandate," the broad grant of discretion vested in this Court allows that the Clerk may be directed to tax costs after entry of a jury verdict. *See Long v. Howard Univ.*, 561 F. Supp. 2d 85, 96 (D.D.C. 2008) (noting that, even when an appeal has been filed, "nothing in

the [local] rule prevents the Court from determining the amount of costs the prevailing party is entitled to recover and deferring taxation of those costs to a later date.")

Next, defendant persuasively counters each of plaintiff's objections to itemized costs set out in the Bill of Costs. First, defendant explains that the rush fee for service on witness Ayesha Henderson was necessary because "the process server made multiple attempts to serve Ms. Henderson with her witness subpoena, beginning in July [several weeks prior to the trial], but ultimately was unable to serve the subpoena" until August 5, less than two days before the start of trial. Def.'s Reply in Supp. of Bill of Costs at 4, ECF No. 77. The rush service fee of $120 was thus reasonable in this case to secure Ms. Henderson's appearance at trial.

Second, defendant explains that the costs related to defendant's investigation into plaintiff-decedent's death—specifically, obtaining transcript and video service of a deposition of plaintiff Paula Lynch and obtaining transcripts of sentencing hearings for the criminal defendants prosecuted for contributing to plaintiff-decedent's death—were necessary to prepare for cross-examination of plaintiff at trial. *Id.* at 4–6. As noted, *supra*, in Part I and n.1, less than three weeks before trial, on July 20, 2023, defendant filed an Emergency Motion to Dismiss plaintiff's claims on the grounds that plaintiff-decedent and plaintiff failed to disclose information about plaintiff-decedent's past drug use and cause of death in discovery. Def.'s Emergency Mot. at 1. Defendant claimed that it was only made aware of plaintiff-decedent's drug use at the pretrial conference held on July 14, 2023. *Id.* This Court held a hearing on July 28, 2023 on defendant's motion, directing defendant to prepare to discuss "why [defendant] did not request from this Court an order compelling discovery, pursuant to Federal Rule of Civil Procedure 37(a)(3), regarding Diamond Lynch's cause of death at any point during discovery, including after receiving Diamond Lynch's death certificate in January 2023 that listed her cause of death

17

as 'Acute Fentanyl Intoxication[,]'" *see* Def.'s Emergency Mot., Ex. 6, ECF No. 48-7, and after the Court's initial inquiry, at the status hearing on April 21, 2023, into Diamond Lynch's cause of death." Minute Order (July 21, 2023). This Court denied defendant's Emergency Motion to Dismiss, but reopened fact discovery for the period of time between July 28, 2023 and August 4, 2023, to allow defendant to take a deposition of plaintiff and submit any further discovery requests. Minute Order (July 28, 2023). Transcripts of the deposition of plaintiff, and of the sentencing hearings for two individuals prosecuted for contributing to plaintiff-decedent's death, were ordered for expedited delivery. Def.'s Reply in Supp. of Bill of Costs at 5–6.

The cost of expedited deposition transcripts is taxable only when expedited processing was "necessarily obtained [ ] for use in the case." *See Sun Ship, Inc.*, 655 F.2d at 1318 (quoting 28 U.S.C. § 1920(2)). Such expedited processing was appropriate here, however, because, the reopening of discovery was only necessary because of plaintiff's failure to comply with her prior discovery obligations, and defendant only became aware of the need to depose plaintiff and access the criminal sentencing transcripts at the pretrial conference, where plaintiff "represented to this Court that Plaintiff still believes the father of Decedent Lynch's child had something to do with her daughter's death." Def.'s Reply in Supp. of Bill of Costs at 6. Plaintiff suggests that these transcripts are not taxable because they were not used on the record at trial, but whether deposition transcript costs were "'reasonably necessary for the litigation,' [] is 'determined as of the time' the costs were incurred." *United States v. Halliburton Co.*, 954 F.3d 307, 313 (D.C. Cir. 2020) (quoting *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 295 (6th Cir. 2015)). Given defendant's use of the deposition transcripts to prepare for cross-examination of plaintiff—anticipating that plaintiff might present to the jury theories related to her daughter's death—and the fact that defendant did not know prior to ordering the transcripts several days

before trial either whether plaintiff's theory of her daughter's death was likely to feature prominently in plaintiff's case or whether plaintiff's motion *in limine* would be granted to bar information about the daughter's drug abuse, *see supra* n.1, the taxation of the deposition transcript costs is warranted here.

Lastly, plaintiff objects to the costs requested by defendant to cover witness Montez Morrison's travel to the District of Columbia for trial. Pl.'s Objection to Bill of Costs at 2. Plaintiff argues that "trial lasted only two days, yet Defendant rented a hotel room for Mr. Morrison six nights, for almost $300 per night ($1,712.56 for 6 nights), and a vehicle ($287.02) even though the Court is within walking distance of the Metro." *Id.* In reply, defendant clarifies that while the receipt attached with its Bill of Costs showed the total cost of Mr. Morrison's stay, the calculation of its total costs requested included only the three nights of lodging necessary for his participation in the trial. Def.'s Reply in Supp. of Bill of Costs at 6. His hotel expense was thus $961.22, rather than the $1,712.56 asserted by plaintiff. Defendant also justifies Mr. Morrison's car rental, given his lack of familiarity with the District of Columbia. *Id.* The costs incurred for Mr. Morrison's travel thus included his lodging, airfare, rental car, and meals for the days when he actively participated in the trial. Each of these expenses may be taxed as a cost under Local Civil Rule 54.1(d) and 28 U.S.C. § 1821(c).

Plaintiff's objections to defendant's Bill of Costs are thus rejected, and the final taxable amount owed by plaintiff to defendant is therefore $7,871.73.

## IV.    CONCLUSION

For the above reasons, plaintiff's motion for reconsideration, which is construed as a motion for a new trial, is denied, and defendant's bill of costs is granted. The final taxable

amount that the Clerk shall tax is $7,871,73, which includes all costs incurred and claimed by defendant pursuant to Local Civil Rule 54.1 and Federal Rule of Civil Procedure 54(d)(1).

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  February 8, 2024

                                                           _____
                                                           **BERYL A. HOWELL**
                                                           United States District Judge